## Richmond

EUGENE ELWOOD ALBRECHT, ET AL. v. FRED A. TROEMMLER, ET AL.

TROEMMLER PROPERTIES, INCORPORATED, ET AL. v. INVESTORS MANAGEMENT SERVICES, LTD., ET AL.

June 12, 1972.

Record Nos. 7687 and 7688.

Present, Snead, C.J., I'Anson, Carrico, Harrison, Cochran and Harman, JJ.

*Lytton H. Gibson*, for appellants in Record No. 7687.

*Gerald E. Williams*, for appellants in Record No. 7688.

*Edgar B. May* [D.C.] (*Harold W. Adams*, on brief), for appellees in Record Nos. 7687 and 7688.

Per Curiam.

Code § 6.1-330 provides that there shall not be charged for a loan secured by a deed of trust, except a first deed of trust on improved residential property, an amount exceeding interest at 6%[1] plus an investigation fee of 2%. And under Code § 6.1-330.1, any deed of trust or note received or made in violation of § 6.1-330 shall be "null and

---

[1] This limitation was fixed by reference to Code § 6.1-234. In 1970, the General Assembly increased the applicable interest rate to 7%. Code § 6.1-234.1. The transaction in this case took place before the change.

void and unenforceable." The question for decision is whether these statutory provisions apply to the transaction here involved.

The record shows that Investors Management Services, Ltd., (IMS) agreed to make a loan in the amount of $155,000 to Troemmler Properties, Incorporated, (Troemmler Properties) on three improved residential lots in Fairfax County. The loan was to be represented by a promissory note due in one year and secured by a first deed of trust on the lots. Interest was to be at 6%, but a "Loan Service Fee" to be paid IMS would have increased the amount charged for the loan beyond that permitted by Code § 6.1-330, if applicable.

IMS solicited government employees in the Washington area to participate in the loan and collected from a group of such employees (the Group) the amount necessary to settle the loan. A settlement date was fixed, and the deed of trust and note were executed by Troemmler Properties. However, IMS produced only $73,000 of the required amount and "wrongfully withheld" the balance. The settlement attorney recorded the deed of trust but refused to deliver the note to IMS.

There were existing first deeds of trust on two of the lots in question which were to be discharged from the proceeds of the loan. The existing trusts were not paid off, and so the IMS trust became, contrary to the agreement of the parties, a second trust on the two lots.

When the Group learned of the defalcation of the funds of its members, it sought and secured from IMS an assignment of the note executed by Troemmler Properties. Later, a dispute arose between the Group and Troemmler Properties over "who was responsible for the loss occasioned by the wrongdoing" of IMS. Finally, a compromise was reached whereby the face amount of the note was reduced from $155,000 to $100,000 and the interest rate was increased to $1\frac{1}{2}\%$ per month. Time for payment was extended for nine months since, had the note been delivered originally, it would have soon become due. The note was then delivered to a trustee for the Group.

Default occurred in payment of the note when it became due. The lots were advertised for foreclosure, a sale was held, and the trustee for the Group became the purchaser.

Thereafter, Troemmler Properties, together with Fred A. Troemmler and Letha F. Troemmler, who had personally guaranteed payment of the note, filed a Bill of Complaint (Record No. 7688). The bill sought to have the IMS deed of trust and note declared null and void under Code §§ 6.1-330 and -330.1 and to have the foreclosure sale

and resulting conveyance declared nullities. At about the same time, Eugene Elwood Albrecht and Omajeanne Albrecht, the holders of a note secured by a junior deed of trust on one of the lots, filed a Petition for Declaratory Judgment (Record No. 7687). The petition sought a declaration that the foreclosure sale and resulting conveyance were nullities under Code §§ 6.1-330 and -330.1.

The two proceedings were consolidated for trial. The trial court denied the relief sought and dismissed the bill and the petition. We granted appeals.

The appellants point out that under the original agreement Troemmler Properties was to be charged, and under the compromise was actually charged, an amount in excess of that permitted by Code § 6.1-330. They then contend that since the IMS trust became a second trust, although contrary to the intention of the parties, the deed of trust and note are "null and void and unenforceable" under § 6.1-330.1.

We do not agree. Code § 6.1-330 is intended to proscribe the charging of excessive amounts for certain types of *loans*. In the circumstances of this case, no loan as contemplated by § 6.1-330 ever came into existence. When IMS produced only a part of the funds necessary to fulfill its agreement and the settlement attorney consequently refused to deliver the note, what existed was not a loan. What did exist was a legal controversy over a broken agreement— an agreement which, if consummated as originally made, would not have violated § 6.1-330. When, thereafter, the parties reconciled their differences, what came into being was a compromise and settlement—something quite different from a loan. Since in neither instance was there a loan as that term is contemplated by § 6.1-330, there was no violation of the statute.

*Affirmed.*